OPINION *Page 2 
{¶ 1} Defendant-appellant James Klein appeals his conviction and sentence from the Canton Municipal Court on one count of operating a vehicle while under the influence of alcohol and drug of abuse. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On May 21, 2006, appellant was arrested and charged with operating a motor vehicle under the influence of alcohol/drug of abuse in violation of R.C. 4511.19(A)(1)(a), a misdemeanor of the first degree, driving under an FRA suspension in violation of R.C. 4510.16, a misdemeanor of the first degree, speeding in violation of R.C. 4511.21, a minor misdemeanor, and driving without wearing a safety belt in violation of R.C. 4513.263, also a minor misdemeanor. At his arraignment on May 23, 2006, appellant entered a plea of not guilty to the charges.
 {¶ 3} Thereafter, on June 27, 2006, appellant withdrew his former not guilty plea and pleaded no contest to driving under an FRA suspension, speeding, and failure to wear a safety belt. The trial court found appellant guilty of those charges. Immediately thereafter, a jury trial commenced on the charge of operating a motor vehicle while under the influence of alcohol/drug of abuse. The following testimony was adduced at trial.
 {¶ 4} Deputy Ryan Boettler of the Stark County Sheriffs Department was in uniform in a marked cruiser at approximately 8:00 a.m. on May 21, 2006, when he pulled appellant over for speeding. According to Deputy Boettler, appellant was traveling 52 mph in a 35 mph zone and had a passenger in his car. When the deputy approached appellant, who was sitting in the driver's seat of a Buick Century, he *Page 3 
discovered that appellant's speech was slurred, his eyes were glassy, and his breath smelled of alcohol. Appellant "continued to talk in an excited manner." Transcript at 60. Deputy Boettler determined that appellant did not have a valid driver's license and was not the owner of the Buick Century.
 {¶ 5} Deputy Boettler testified that he then had appellant exit the Buick Century and sit in back of the patrol car while the deputy checked who was the owner of the Century. When the deputy then asked appellant if he was willing to perform field sobriety tests, appellant responded in the affirmative.
 {¶ 6} At trial, Deputy Boettler testified that appellant showed four out of six clues on the horizontal gaze nystagmus (HGN) test and that, with respect to the walk-and-turn test, appellant "did not perform poorly . . ., he did take ten steps instead of nine, that was the only indicator I had on that test." Transcript at 65. The deputy also had appellant perform the one-legged stand test. However, appellant was unable to perform such test despite multiple attempts to do so and continually placed his raised foot on the ground.
 {¶ 7} After a videotape of appellant's performance on the field sobriety tests was played for the jury, Deputy Boettler testified that appellant told him that he had imbibed three beers. Deputy Boettler further testified that there were unopened Bud Lites, an opened empty bottle of vodka and a partial container of orange juice in the back seat of the Buick Century. The above were not bagged and tagged into evidence.
 {¶ 8} Appellant was then taken to the jail where he agreed to submit to a breath alcohol content (BAC) test.
 {¶ 9} The next witness to testify at trial was Deputy Harry Haines of the Stark County Sheriff's Department. Deputy Haines testified that he responded to Deputy *Page 4 
Boettler's call about a traffic stop. According to Deputy Haines, appellant's speech was "pretty slurred" and there was a strong odor of alcohol about his breath. Transcript at 83. The following testimony was adduced when Deputy Haines was asked what he observed when appellant performed the field sobriety tests:
 {¶ 10} "A. He had some slurred speech, while Deputy Boettler was giving him instructions he seemed fidgety at the time, not quite nervous, but still uncomfortable. I wasn't in a position to see his eyes during the Horizontal Gaze Nystagmus but the second field sobriety test, the One Legged Stand, he had trouble completing, I don't believe he was able to complete that.
 {¶ 11} "Q. Were you there when the Defendant did the Walk and Turn?
 {¶ 12} "A. Yes, maam.
 {¶ 13} "Q. And what did you observe from that?
 {¶ 14} "A. The instructions that Deputy Boettler gave, he didn't complete to what Deputy Boettler asked him to do, he do [sic] nine steps and turn, but his heel to toe was not together, he was kind of wobbley [sic], a bit fidgety, and he was quick to complete the exercise." Transcript at 84.
 {¶ 15} Stark County Sergeant Lou Darrow testified at trial that he administered a blood alcohol test to appellant at the jail and that appellant blew a .053. Since the reading seemed low to the sergeant, he asked appellant if he "was doing anything else today and he had told me that he had done some Cocaine earlier and also had smoked some Marijuana." Transcript at 91 A. Appellant, who Sergeant Darrow testified had slurred speech and smelled of alcohol, then agreed to submit to a urine test. The urine test showed a .07% urine ethanol content and 8,358 nanagrams per milliliter of *Page 5 
benzoylecognine, a metabolite of cocaine. Jay Spencer of the Stark County Crime Lab testified that the amount of benzoylecognine in appellant's blood indicated recent cocaine use.
 {¶ 16} At the conclusion of the State's case, appellant moved for a judgment of acquittal which was overruled by the trial court.
 {¶ 17} Subsequently, the jury, on June 27, 2006, found appellant guilty of operating a vehicle while under the influence of alcohol and a drug of abuse. Pursuant to a Judgment Entry filed on the same day, appellant, with respect to such charge, was ordered to serve 180 days in jail with all but sixteen (16) days suspended. Appellant was given credit for one day of jail served. In lieu of the suspended jail days, appellant was ordered to sign up with Quest Multiple Offender Program and to comply with its recommendations. Appellant also was fined $350.00.
 {¶ 18} With respect to the charge of driving under an FRA suspension, appellant was ordered to pay court costs and to serve 180 days in jail, with all but sixteen days suspended. Appellant also was ordered to pay court costs with respect to the charge of speeding and, with respect to the charge of driving without a safety belt, to pay a fine of $30.00 and court costs. Finally, appellant's driver's license was suspended for a period of one year.
 {¶ 19} Appellant now raises the following assignment of error on appeal:
 {¶ 20} "THE TRIAL COURT'S FINDING OF GUILTY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE." *Page 6 
 I {¶ 21} Appellant, in his sole assignment of error, argues that his conviction for driving under the influence of alcohol and a drug of abuse is against the manifest weight and sufficiency of the evidence. We disagree.
 {¶ 22} In State v. Jenks (1981), 61 Ohio St.3d 259, 574 N.E.2d 492, the Ohio Supreme Court set forth the standard of review when a claim of insufficiency of the evidence is made. The Ohio Supreme Court held: "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id. at paragraph two of the syllabus.
 {¶ 23} On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment." State v. Thompkins, 78 Ohio St.3d 380,387, 678 N.E.2d 541, 1997-Ohio-52, citing State v. Martin (1983), 20 Ohio App.3d 172, 175. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the *Page 7 
weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967),10 Ohio St.2d 230, 227 N.E.2d 212, syllabus 1.
 {¶ 24} R.C. 4511.19 governs driving under the influence. Subsection (A)(1) states in pertinent part, "No person shall operate any vehicle, streetcar, or trackless trolley within this state, if, at the time of the operation * * * [t]he person is under the influence of alcohol, a drug of abuse, or a combination of them."
 {¶ 25} Appellant, in support of his assignment of error, notes that he was not pulled over for driving badly, but rather for speeding. He further notes that he only exhibited one indicator on the walk-and-turn test, four out of six indicators on the HGN test and was unable to complete the one leg stand. Appellant also points out that he blew under the legal limit on the breath test. Morever, appellant argues that no one testified that the amount of alcohol and/or cocaine in his blood definitely affected his driving.
 {¶ 26} However, in addition to testing 0.053 on the alcohol breath test, a urine test showed levels of benzoylecgine, a metabolite of cocaine, in appellant's urine, indicating recent cocaine use. Jay Spencer of the Stark County Crime lab testified that the level of cocaine was "not a huge number but its not a small number . . ." Transcript at 100. Appellant, who was stopped for speeding and who did not have a valid driver's license, admitted to imbibing three (3) beers and, after the breath test, admitted to recent cocaine and marijuana use. In addition, as is stated above, appellant was unable to perform the one legged stand and exhibited four out of six clues on the HGN test. A videotape of appellant's performance on the field sobriety tests was played for the jury. While appellant contends that the two officers told drastically different accounts of the *Page 8 
field sobriety testing, the jury, as noted by appellee, was able to view the videotape and compare it to the testimony.
 {¶ 27} Based on the foregoing, we find that any rational trier of fact could have found that appellant was operating a motor vehicle while under the influence of a combination of alcohol and a drug of abuse. We further find that the jury did not lose its way in convicting appellant of operating a motor vehicle while under the influence of alcohol and a drug of abuse.
 {¶ 28} Appellant's sole assignment error is, therefore, overruled.
 {¶ 29} Accordingly, the judgment of the Canton Municipal Court is affirmed.
By: Edwards, J.
Hoffman, P.J. and
 Farmer, J. concur *Page 9 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Canton Municipal Court is affirmed. Costs assessed to appellant. *Page 1